**TEXAS EMPLOYERS' INS. ASS'N v. FOREMAN.**

No. 14293.

Court of Civil Appeals of Texas. Dallas.

Jan. 19, 1951.

Rehearing Denied March 9, 1951.

Keith & Brown, Sherman, Gullett & Gullett, Denison, for appellant.

Webb & Rogers and Lester C. Newman, all of Sherman, for appellee.

BOND, Chief Justice.

This suit was filed by appellee P. V. Foreman under the Workmen's Compensation Law, Rev.St.1925, Art. 8306 et seq. as amended, Vernon's Ann.Civ.St. art. 8306 et seq., against appellant Texas Employers' Insurance Association, the insurance carrier of Sherman Manufacturing Company, a cotton mill located at Sherman, Texas, for injuries alleged to have been sustained by him in his employment, resulting in temporary incapacity, total temporary and partial permanent incapacity, permanent partial incapacity, or temporary partial incapacity to labor; in the alternative, total and permanent disability. The appellant answered by numerous special exceptions, general and special denials, and affirmatively alleged that if the appellee is suffering from any disability, such was caused by pre-existing disease or diseases of long standing, or by prior injury or injuries sustained by him while not in the course of his employment with Sherman Manufacturing Company, or by a combination or combinations of such injuries; and, in the alternative, that if plaintiff received any injury or injuries while he was in the course and scope of his employment with said manufacturing Company, his disability to labor resulting therefrom was temporary,—not permanent. The judgment appealed from is based on jury

findings that the appellee sustained accidental injury to his back in the course of his employment with the Sherman Manufacturing Company, resulting in total and permanent disability to work.

The appellant presents eleven points of error which may well be grouped into three for reversal and remand of the cause. The first three points allege insufficiency of evidence to sustain the findings of the jury, in that the injuries, if any, as found by the jury are against the preponderance of the evidence, in conflict with justice, unconscionable, and the result of prejudice. Points 4 and 5, that a lengthy hypothetical question propounded to and answered by an expert witness was so framed as to be unintelligible, confusing, misleading, assuming facts not reflected in evidence. Points 6, 7 and 8, that the trial judge, after being repeatedly advised by the jury that it was unable to reach an agreement on the primary issue,—special issue No. 1, making inquiry as to whether Mr. Foreman sustained injury to his back in course of his employment by Sherman Manufacturing Company—judicially coerced the jury into an agreement; thus refusing to discharge the jury and declare a mistrial. Points 9 and 10 allege that the court erred in not submitting issues to the jury, unconditionally, that appellee's incapacity to work, if any, was partial and temporary. Point 11, that the judgment should be reversed because of the prejudicial effect of all the combinations of errors aforesaid resulting in unfair trial.

The record evidence shows that the verdict of the jury with reference to the alleged accident and resulting injury to appellee's back sustained in the course of his employment with the Sherman Manufacturing Company, is based almost exclusively on appellee's own testimony; and that, too, shadowed by appellee in refusing to allow the appellant to present to the jury evidence which adversely and potentially challenges his testimony of compensable injury. We are in serious doubt as to whether, under the circumstances, appellee's proof justified submission of the case to the jury; but we must conclude, as it is our duty, that there was some proof which might justify the

court's action in such submission,—notwithstanding the cloud cast upon appellee's own testimony by his refusal to allow disclosure of his report of causation of his injuries, made by him to Veterans' Hospital at McKinney, Texas, on entry thereto because of prior physical delinquencies. True enough, the plaintiff-veteran was within his legal right in refusing to allow appellant the disclosures in such report; but under the facts and circumstances in this case,—the evidence being doubtful as to whether the injuries complained of were the result of an accident in the course of his employment with Sherman Manufacturing Company, or resulted from prior accidents—the refusal to permit the historical report of his prior troubles certainly must be viewed as adverse to his testimony and claim of compensable injury. Thus, for reasons hereinafter related, requiring reversal and remand of this cause, we pretermit further discussion as to the weight or preponderance of the evidence, as same may be different on another trial.

We are further of the opinion that the hypothetical question complained of in appellant's second group of points, propounded to and answered by Dr. Brown, is not of such grave error as would, alone, justify a reversal of this cause. Dr. Brown was a qualified expert,—a physician of long and various practice of medicine and surgery. After interpreting the X-ray film of Mr. Foreman's spine, the doctor testified that it showed "an unusually straight back. There should be more forward curve, more lumbar lordosis is the correct term, than is shown here. In other words, this back bone shows no lumbar curvature, and it is practically a straight back. Of course what he's doing, he stoops his shoulders and eliminates the normal curvature in his back here in an attempt to relieve the pressure at the lumbosacral joint. * * * Towards the back of it (the film), and the left—this intevertebral disc is not as thick as it should be." The Doctor was then asked:

"Q. What history did he give you? A. Do you want me to read you this history?

"Q. Yes, sir. A. Well, he stated he was 55 years old. His general health had always

been good. And he had suffered a minor injury, had broken a bone in one leg, with complete recovery. In 1945 he sprained his back lifting a motor at Perrin Field. Was treated by Dr. Enloe, who hospitalized him and put extension on his left leg. After he went back to work he was treated by some osteopath at Gainesville, and also by the Post Surgeon at Perrin Field. He lost two or three weeks' time from work and thought that he was entirely recovered. At this time he developed a hydrocele in the right scrotum. Later he developed a bilateral inguinal hernia, for which he wore a truss. After wearing this truss a few months, the hernia disappeared. In March 1947, he went back to work for the Sherman Manufacturing Company of Sherman. The work he was doing was quite heavy and involved lifting in a bad position. After about a year of this he had a recurrence of the hernia in his right groin. The left groin has not given him any trouble." (Objection was sustained to the above related history.)

"Q. All right, Doctor, assuming that in 1947 Mr. Foreman went to work for the Sherman Manufacturing Company, working five and six days a week following the trade of a weaver, and continued to work there when work was available to him on an 8-hour shift, had no trouble or complaints with his back, was able to and did perform the usual duties of a weaver in and about the mill here in town, and assuming on the 14th of March, 1949, while in a stooped position, bending over to pull back a warp which was stubborn and resisted his movement, he received a sharp pain in his lower back, that after some 15 or 20 minutes it subsided to some extent and he continued to work throughout his shift; the next day, though suffering pain, he worked, and the next day under the same conditions he worked, perhaps the next day—

("Q. addressed to the plaintiff: Did you work the next day? A. I worked two days after I was hurt.)

"Q. Working two days after he was hurt, and on the third morning, because of the pain in his back that had radiated into his left leg, he was unable to get up and return to work; and that since that time he

has been in the McKinney Hospital—Veterans Hospital in McKinney, some three or four weeks, been rejected for employment at the same plant by the plant doctor; has not returned to work; in his opinion been unable to return to work; that he continues to suffer pain from his back and discomfort in his leg, and confining yourself solely to the objective findings which you made, and disregard what subjective findings were placed before you, is it reasonably probable that the injury he received to his back on the 14th of March, 1949, caused the condition which you find in your X-ray films in his back?"

The appellant objected to the question on the following grounds: " * * * first, because it is confusing and misleading in that counsel has included in the question a number of subjective symptoms, and then at the end has asked the Doctor to eliminate the subjective symptoms and to place it only on the objective symptoms, without stating which one of the assumptions he is eliminating. So the answer would be unintelligible to the jury, and the jury would not know and neither would we what the Doctor was regarding and what he was not regarding. We object to the question further because the question itself contains assumptions relating to the plaintiff's own opinion on his disability to work, which is improper to be included in a hypothetical question to a Doctor, and is in fact asking the Doctor merely, if he assumes that the plaintiff's opinion is correct, what his answer would be; the plaintiff's opinion not being that of an expert, and being an attempt to pile one opinion on top of another opinion." (The objections were severally overruled.) The witness answered in the affirmative.

In our opinion the subjective symptoms and related assumption of facts, with the opinion of appellee as to his ability to return to work, should have been eliminated from the hypothetical question; and, appellee having incorporated such immaterial matters in the question and having concluded it with request that the witness disregard such subjective symptoms and assumptions, the hypothetical question was calculated to confuse the witness and confound the issue

as to whether the objective symptoms reasonably indictaed compensable injury to appellee's back. However, the error complained of is not such as would necessitate a reversal of this cause, and on another trial the question should be so framed as to eliminate the objectionable matter.

The proceedings in connection with appellant's further points in respect to the action of the trial court in communicating with the jurors to ascertain the state of their deliberation, which we think improvidently done by the trial judge, was of such error as to justify a reversal of this cause; especially so, in view of the crucial question in the suit. The record shows that on two or more separate occasions during a period of two days in which the jury had been deliberating, the jury filed into court and, through its foreman, Mr. L. B. Bell, in writing, advised the court that the jury could not come to an agreement on special issue No. 1, supra. The situation seemed hopeless as to an agreement of the jury in deciding the issue. The appellant had moved that the jury be discharged and a mistrial declared; appellee stated to the court, outside the presence of the jury, "Your Honor, I don't believe the jury would arrive at a verdict if it stayed out a week. * * * It would serve no useful purpose to keep them together." Whereupon, when the jury again filed into court and announced that it could not agree on a verdict, the trial judge interrogated the jurors, propounding to each of them the question (as to Juror Beer): "Mr. Beer, do you feel like you will ever be able to reach a verdict?" To which the juror answered, "Yes, sir." Ten other jurors made affirmative answer to the same question; one juror, Mr. Bell, the foreman, made negative answer—"I don't think so." There was no disclosure as to the status of the verdict, that is, as to whether the eleven were favorable or unfavorable to answering the question "Yes" or "No." Neither did the judge or litigant attorneys know how the jury stood, other than that the division was eleven to one, and that the one was Mr. Bell. After such interrogation, the court directed the jury to retire for further deliberation, and about an hour and a half later the jury filed into court with the verdict.

 Rule 283, Texas Rules of Civil Procedure, provides that the officer in charge of a jury shall not communicate with them or permit the same to be done, "except to inquire if they have agreed upon a verdict". Such admonition precludes the judge or any other person other than the jurors themselves from knowing the state of the jury's deliberations before the verdict is returned into court. Communication with the jury, before verdict, is limited "through their foreman", as provided in Rule 286, T.R.C.P. We are of the opinion that the trial court, regardless of its action in ascertaining the state of mind of each of the jurors as to his personal opinion on reaching a verdict, intended no wrong; yet, the ultimate effect of such inquiry addressed to each of the jurors as to what he individually thought could be done, disclosed that Mr. Bell was standing out alone against the eleven. And such disclosure could not help having effect on the jury,—in a measure forced an agreement.

 The action of the court falls clearly within the ban as stated in Houston Electric Co. v. Lee, 139 Tex. 166, 162 S.W.2d 692, 693: "* * * The result of the communication was not merely the ascertaining by the judge of whether the jury had 'agreed upon a verdict,' which specific fact may be ascertained as provided by the article just quoted from. The result was to disclose to the judge the state of the jury's deliberations before the verdict was rendered. While it was permissible under the terms of the statute for the judge to cause the bailiff to inquire if the jury had agreed upon a verdict and to communicate to the judge whether or not a verdict had been reached, it was reversible error for the state of the jury's deliberations to be disclosed to any person by the officer in charge, or even for such officer to communicate with the jury concerning the state of their deliberations other than to ascertain in the manner provided whether a verdict had been reached. Beyond this fact it is not the lawful concern of the judge or any person other than

the jury what the state of its deliberations was. This is true regardless of the fact that in ascertaining the state of the deliberations no wrong .* * . * was intended. Millerman v. H[ouston] & T. C. R. Co., Tex.Civ.App., 27 S.W.2d 897, writ refused." See also Houston Electric Co. v. McLeroy, 139 Tex. 170, 163 S.W.2d 1062; Currie v. Smith, Tex.Civ.App., 184 S.W.2d 656.

■ We overrule appellant's contention that the trial court erred in refusing to submit its requested issues making inquiry, (1) if P. V. Foreman's incapacity "was not, or is not partial," and (2) if Foreman's incapacity "was not, or is not temporary." These issues were properly raised affirmatively by appellant in its answer, exceptions made to the court's charge in failing to submit the issues unconditionally. However we are of the opinion that the court's charge correctly embodies the issues. In question No. 5, the inquiry was made, Did the injuries Foreman sustained on the occasion in question "naturally result in his incapacity to work, in any percentage, for any length of time?" To which the jury answered "Yes." Then in question No. 9, the inquiry was made, based on the affirmative answer to question No. 5, Was Foreman's incapacity to work "partial for any length of time?" To which the answer was "No." So we think defendant's issue of partial incapacity was thus unconditionally submitted. Then, too, question No. 6 (conditioned upon the affirmative answer to No. 5), inquired if Foreman's incapacity to work was "total for any length of time?" The answer was "Yes." Question No. 7 inquired if the incapacity to work "was or is temporary or permanent?" To which the jury answered "Permanent." We are of the opinion that the issues are properly submitted, and that the trial court did not err in refusing appellant's special issues involving the same issues, in slightly different form, already submitted in the court's charge.

We are therefore of the opinion that for the error above set out, the judgment should be reversed and the cause remanded for a new trial in conformity with this opinion. It is so ordered.